## STATE *vs.* MIKE GILBERT.

1. LOTTERIES—EVIDENCE—BURDEN OF PROOF.

    In a prosecution for disposing of a lottery ticket, it is incumbent upon the state to prove every essential element of the crime charged.

2. LOTTERIES—SALE OF TICKETS OR CHANCES.

    A certificate stating that a certain article would be given without extra charge to the holder of certificate bearing number corresponding to the last three figures of the Philadelphia bank clearings as published, etc., made the right to such article depend on chance in the nature of a lottery prohibited by *Rev. Code* 1915, § 3564, in that it provided a chance to get one of a list of articles without payment of the full price and scheme for the distribution of money or property by chance is a lottery.

3. LOTTERIES—DEFINITION.

    The fact that the element of chance pertaining to the purchase of a ticket goes to the amount of return rather than to the fact of any return does not prevent its being a lottery, since, as it gives the purchaser a chance to obtain something more than he paid for, the gambling element is there; the difference between such transaction and a simple wager being only in degree.

4. LOTTERIES—QUESTIONS FOR JURY—INTENT.

    In a prosecution for selling a lottery ticket, the question of criminal intent or guilty knowledge of the accused is to be determined by the jury from the exhibits and evidence, together with the court's instruction on the law applicable to the facts.

(*April* 2, 1917.)

BOYCE, J., sitting.

*P. Warren Green*, Deputy Attorney General, for the state.

*J. Frank Ball* for the accused.

Court of General Sessions, New Castle County, March Term, 1917.

INDICTMENT, No. 71, March Term, 1917.

Mike Gilbert was indicted for disposing of a lottery ticket under *Rev. Code* 1915, § 3564. Verdict, not guilty.

The state was permitted to show another transaction like the one disclosed in this case. The two witnesses for the state on cross-examination, testified without objection, that they did not regard the transaction as fraudulent. The facts in the case and questions of law presented appear in the charge of the court.

BOYCE, J., charging the jury:

Mike Gilbert stands indicted under *Rev. Code* 1915, § 3564, which provides:

"If any person shall by himself, his servant or agent, or as the servant or agent of another, sell or dispose of, or have in his possession with intent to sell or dispose of, any lottery policy, certificate, or anything by which such person or any other person promises or guarantees that any particular number, character, ticket, or certificate, shall in the event, or on the happening of any contingency in the nature of a lottery, entitle the purchaser or holder to receive money, property, or evidence of debt, or shall use or employ any other device by which such person, or any other person, promises or guarantees as aforesaid, every person so offending shall, upon conviction," etc.

The first count in the indictment charges the accused with disposing of "a certain thing, to wit, a paper slip with certain words and figures thereon to one James C. Freeland, by which he, * * * the accused, then and there promised that said paper slip should on the happening of a certain contingency in the nature of a lottery, entitle him, the said James C. Freeland, then and there the holder thereof, to receive money and certain goods, chattels of the value * * * against the form of the Act of the General Assembly," etc.

The third count is like the first, except it charges the accused with disposing of "certain numbers."

The second count is like the first, except that instead of the words "by which he the said Mike Gilbert then and there promised that said paper slip should on the happening of a certain contingency in the nature of a lottery entitle him," etc., it is averred "by which the American Diamond and Clothing Company of," etc., "then and there promised," etc.

And the fourth count is like the second in that it charges him with disposing of "certain numbers," instead of "certain things."

There is no proof in this case that the accused himself promised to deliver the selected article, but whatever promise there was in respect thereto, was made by the American Diamond Clothing Company.

Counsel for the accused has asked the court to charge as follows: *First*, that the jury return a verdict of not guilty, as the state has failed to prove the allegations contained in the indictment. *Second*, that according to the evidence produced on the part of the state, said paper slip as mentioned in the evidence was not in the nature of a lottery, but was a free advertising certificate. *Fourth*, that should the jury believe the paper slip as mentioned in the indictment partook of the nature of a lottery, yet in order to find the defendant guilty, the jury must believe beyond a reasonable doubt that the defendant knew this when he gave the same to the prosecuting witness. *Fifth*, intent is the essence of the crime charged, and the jury must believe beyond a reasonable doubt, that the defendant knew he was disposing of a lottery ticket at the time he gave the slip of paper to the prosecuting witness.

[1] The court cannot charge you as requested by these prayers, but does charge you that it is incumbent upon the state to prove every essential element of the crime charged, and will, before concluding, instruct you as to the presumption of innocence, and reasonable doubt, as requested by the third and sixth prayers. The card in evidence in this case reads:

"American Diamond Clothing Company." (Omitting address.) "Philadelphia, Pa., Mr. J. C. Freeland, Address 220 French Street. List of $25.00 articles."

Charge.

Then follows list of the articles. Indorsed on the back of the card is: "Date 2-12, 50c paid, and 2-19, 50c" (initial of collector). Accompany the card is this certificate:

·"Free Advertising Certificate.
"For the purpose of advertising our special $25 articles, one will be given without extra charge to the holder of certificate bearing number corresponding to the last three figures of the Philadelphia bank clearings as published in the newspaper, Saturday afternoon, for the week ending date of Feb., 1917. American Diamond and Clothing Company." (Omitting the address.)

And on the right margin of the certificate are these numbers:.

"0 62
"0 63
"0 64"

The statute prohibits any person by himself, his servant or agent, or as the servant or agent of another, to sell or dispose of, or have in his possession with intent to sell or dispose of, "any lottery policy, certificate, or anything by which such person or any other person promises or guarantees that any particular number, character, ticket, or certificate, shall in the event, or on the happening of any contingency in the nature of a lottery, entitle the purchaser or holder to receive money, property, or evidence of debt," etc.

The statute applies equally to an agent as to a principal.

[2] Lottery has been defined to be a scheme for the distribution of money or property by chance, and that the scheme is not limited to the sale of tickets nor to the terms or promises printed or written upon them. The meaning of a contingency in the nature of a lottery, within the contemplation of the statute, as applied to the facts of this case, is:

"One" (article) "will be given without extra charge to the holder of certificate bearing number corresponding to the last three figures of the Philadelphia bank clearings as published," etc.

The element of lottery in this scheme lies in the chance to get one of the list of articles named on the card without the full payment of twenty-five dollars by the holder of this certificate.

What the Philadelphia bank clearings will be at the end of

every week is the merest guess, and that any number on the certificate will correspond to the last three figures of such clearings is nothing less than chance.    *State v. Sedgewick,* 2 *Boyce,* 453, 81 *Atl.* 472.

[3]    As was said in *State v. Lipkin,* 169 *N. C.* 265, 84 *S. E.* 340, *L. R. A.* 1915F, 1018:

It does not "matter that the person who buys a chance for a trivial sum, in the expectation of winning something of much larger value, can go on with his contributions, and, after paying the full sum of seventeen dollars and fifty cents" (twenty-five dollars in this case) "get the piece of furniture he may want" (a watch and chain in this case).    "This has been held not to devest it of its gambling quality.    *State v. Perry* [154 *N. C.* 616, 70 *S. E.* 387] *supra:* *De Florin v. State,* 121 *Ga.* 593, 49 *S. E.* 699, 104 *Am. St. Rep.* 177; *State v. Moren,* 48 *Minn.* 555, 51 *N. W.* 618.    In the case last cited, it is said that such a feature would probably operate as an additional incentive to purchase a chance in the lottery scheme, and does not take it out of the statute, as the vicious element still inheres in it.    The sale of the ticket gave the purchaser a chance to obtain something more than he paid for,   * * *   and the other fact became an extra inducement for the purchase, making the general scheme more attractive and alluring.    The difference between it and a single wager on the cast of a die is only one of degree.    They are both intended to attract the player to the game, and have practically the effect of inducing others, by this easy and cheap method of acquiring property of value, to speculate on chances in the hope that their winnings may far exceed their investment in value.    This is what the law aims to prevent in the interest of fair play and correct dealing.   * * *   Call the business what you may, a 'gift sale,' 'advertising scheme,' or what not, but it is none the less a lottery,   * * *   if the gambling element is there.   *   *   *"

The court is in full accord with the law as therein stated, and it is applicable to this case.

[4]    The question of criminal intent or guilty knowledge of the accused, as suggested by two of his prayers, is to be determined by you from the exhibits and evidence in this case, together with the court's instruction to you upon the law applicable to the facts of this case.    *    *    *    *    *

Verdict, not guilty.