[Cite as *Brobst v. Lyndhurst*, 2018-Ohio-2725.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105849**

**PAUL J. BROBST, ET AL.**

PLAINTIFFS-APPELLANTS/
CROSS-APPELLEES

vs.

**CITY OF LYNDHURST**

DEFENDANT-APPELLEE/
CROSS-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-872538

**BEFORE:** E.T. Gallagher, P.J., Stewart, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** July 12, 2018

**ATTORNEY FOR APPELLANTS**

Peter Turner
Mayers, Roman, Friedberg & Lewis
28601 Chagrin Blvd., Suite 600
Cleveland, Ohio 44122


**ATTORNEYS FOR APPELLEE**

Paul T. Murphy
Brendan Mewhinney
Raymond J. Schmidlin, Jr.
Henderson, Schmidlin & McGarry Co., L.P.A.
840 Brainard Road
Highland Heights, Ohio 44143
ON RECONSIDERATION[1]

---

[1] The original decision in this appeal, *Brobst v. Lyndhurst*, 8th Dist. Cuyahoga No. 105849, 2018-Ohio-1518, released on April 19, 2018, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

EILEEN T. GALLAGHER, P.J.:

{¶1} Plaintiffs-appellants/cross-appellees, Paul J. Brobst, et al., appeal from the trial court's judgment granting summary judgment in favor of defendant-appellee/cross-appellant, the city of Lyndhurst, Ohio. The appellants raise the following assignment of error for review:

> 1. The trial court erred as a matter of law in denying appellants' motion for summary judgment, and, instead, in granting, in part, appellee's motion for summary judgment.

{¶2} The city raises the following cross-assignment of error:

> 1. The trial court erred in denying [the city's] motion to submit additional evidentiary materials.

{¶3} After careful review of the record and relevant case law, we reverse the trial court's judgment granting summary judgment in favor of the city. We, however, affirm the trial court's judgment denying the city's request to submit additional evidentiary material in support of its motion for summary judgment.

## I. Procedural and Factual History

{¶4} Appellants have resided at, and have been owners of, the real property and dwelling located in the city of Lyndhurst, Ohio, since 1996. Appellants' home is located in an area of the city zoned for residential use. This appeal arises out of a dispute between the appellants and the city concerning whether the appellants' operation of a firearms dealership from their home constituted a "home occupation" in accordance with the city's codified ordinances.

{¶5} In 2005, appellant Paul Brobst met with the Lyndhurst Police Chief and the Lyndhurst Building Commissioner to discuss his plans to operate a firearms dealership out of his home. Mr. Brobst averred that he was informed that he would be permitted to operate the firearms dealership out of his home as long as he met the following conditions (1) only family

members could be employees, (2) that he place no exterior signs advertising his business, (3) that the business would be limited to no more than 25 percent of the ground floor of his home, and (4) that the business would have no outside storage.

{¶6} After meeting with city officials, the appellants opened and continuously operated a firearms dealership known as "Gun Galaxy" from their home. Over the years, Mr. Brobst renewed his Federal Firearms License three times.

{¶7} In June 2016, the appellants received a notification letter from the city stating that they were illegally operating a commercial enterprise in a single family residential zone in violation of the city's ordinances. The appellants were advised that the city would take all actions permitted by law if appellants "d[id] not take steps to legalize this illegal use within 30 days of [the notification.]" In November 2016, appellants received a second notification letter, advising them "to cease operation of its business at that location, or to request a zoning change from the City Planning Commission, or request a use variance from the City Board of Zoning Appeals."

{¶8} In December 2016, the appellants filed a complaint against the city, seeking (1) "a declaratory judgment that the home occupation engaged in by [appellants] is in lawful compliance with the city's Zoning Code," and (2) "a preliminary and permanent injunction enjoining [the city] from taking an action, civil or otherwise, against [appellants] based on an alleged violation of the city's Zoning Code."

{¶9} In response, the city filed its answer and two counterclaims against the appellants. In its first counterclaim, the city sought injunctive relief to prevent the appellants from conducting a retail sales operation from their home in violation of Section 1152.13 of its Codified Ordinances. In its second counterclaim, the city sought a declaratory judgment that the

appellants' in-home sales operation constituted a nuisance under Chapter 3767 of the Ohio Revised Code.

{¶10} Appellants moved for summary judgment in March 2017, arguing that their home occupation is a lawful accessory use in compliance with the city's zoning code. The city filed a brief in opposition and its own motion for summary judgment, arguing that the appellants were operating a retail store in violation of residential zoning restrictions. After the deadline for filings under the trial court's briefing schedule had expired, the city filed a motion to submit additional evidentiary materials, which the trial court denied.

{¶11} In April 2017, the trial court entered judgment in favor of the city on its counterclaim for injunctive relief, but against the city on its nuisance claim. The trial court further entered judgment against the appellants on both claims raised in their complaint. The trial court's judgment stated, in relevant part:

> Ohio court decisions do not support the sale of goods from a residence as within the term "home occupation." The City appropriately describes this as simply a "retail store."
>
> * * *
>
> Based on the parties' evidentiary submissions on summary judgment, the Court finds that there is no genuine issue of material fact and after construing the evidence most strongly in Plaintiff's favor, a reasonable trier of fact could come to but one conclusion and that conclusion is that the operation of a firearms sales dealership from a property zoned for residential use is not a home occupation under Lyndhurst's ordinances and Plaintiff's sales operation is in violation thereof.
>
> As to Defendant's second counterclaim to enjoin a nuisance, the Court finds that based on the evidentiary record before it today, there is no genuine issue of material fact and after construing the evidence most strongly in Defendant's favor, a reasonable trier of fact could come to but one conclusion and that conclusion is that Plaintiff's activities have not been established to be a nuisance as defined by R.C. 3767.01(C).

**{¶12}** The appellants now appeal from the trial court's judgment granting summary judgment in favor of the city. The city appeals from the trial court's denial of its motion to submit additional evidence in support of its motion for summary judgment.

## II. Law and Analysis

**{¶13}** In their sole assignment of error, appellants argue the trial court erred as a matter of law in denying their motion for summary judgment and granting, in part, the city's motion for summary judgment.

**{¶14}** Our review of a trial court's grant of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

**{¶15}** In their motion for summary judgment, the appellants argued that the operation of Gun Galaxy constituted a lawful "home occupation" pursuant to Lyndhurst City Ordinances ("L.C.O.") 1160.04(A). In contrast, the city maintained that the appellants were unlawfully operating a "retail store" in violation of the city's residential zoning restrictions. The parties do not dispute that the appellants' dwelling is located in a residential use zoning district. Thus, this

court is required to assess whether the firearm-sales operation falls within the definition of a "home occupation," as the appellants suggest, or is an unlawful "retail store," as held by the trial court.

**{¶16}** The application of a statute or ordinance to the facts is a question of law. *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 141 Ohio St.3d 318, 2014-Ohio-4809, 23 N.E.3d 1161, ¶ 25. In construing the ordinances at issue, we must adhere to the rules of statutory construction. *See Bosher v. Euclid Income Tax Bd. of Rev.*, 99 Ohio St.3d 330, 2003-Ohio-3886, 792 N.E.2d 181, ¶ 14. When the language of an ordinance is unambiguous, we apply the clear meaning of the words used. *Id.* In addition, provisions relating to the same general subject matter must be read in pari materia. *Id.* Finally, it is a well-established rule of construction that specific provisions shall prevail over general provisions. *Village Condominiums Owners Assn. v. Montgomery Cty. Bd. of Rev.*, 106 Ohio St.3d 223, 2005-Ohio-4631, 833 N.E.2d 1230, ¶ 10.

**{¶17}** L.C.O. 1150.09(c)(73) defines a "home occupation" as follows:

> "Home occupation" means an accessory use[2] which is an activity, profession, occupation, service, craft or revenue-enhancing hobby clearly incidental and subordinate to the use of the premises as a dwelling and is conducted entirely within the dwelling unit. However, such home occupation shall be conducted in the dwelling used by the person as his or her private residence, no person shall be employed other than members of his or her immediate household and such home occupation shall not give rise to a nuisance of any kind and shall not be otherwise detrimental to the district.

**{¶18}** At the time this case was initiated, the city's ordinances provided that an individual was permitted to operate a "home occupation" as an accessory use in a residential district, provided the following conditions were satisfied:

---

[2] L.C.O. 1150.09(c)(3) defines an accessory use as "a subordinate use or building located on the same lot with, and customarily incidental to, the main use or building."

A. No person is employed other than members of his or her immediate household;

B. The home occupation or professional office generates no outdoor storage of materials, equipment or vehicles;

C. Such home occupation or professional office occupies no more than twenty-five percent of the total ground floor area of the dwelling;

D. The home occupation or professional office is conducted wholly within the dwelling;

E. No equipment is used which will create objectionable disturbances beyond the premises;

F. No window display or signboard is used to advertise such occupation, other than a name plate attached to the dwelling, as provided for in Section 1170.08, which may designate such occupation thereon along with the occupant's name and address; and

G. The home occupation or professional office does not change the residential character of the dwelling exterior.

L.C.O. 1160.04(a)(4).

{¶19} It is necessary to note that L.C.O. 1160.04(a)(4) was amended less than two months after the trial court's judgment in this case. The section now includes the following additional condition:

I. The home occupation shall not allow * * * *sales of retail goods not manufactured or fabricated on the premises.*

(Emphasis added.) L.C.O. 1160.04(a)(4)(I) (Ord. 2017-24. Effective June 5, 2017.). Certainly, this new condition is relevant to the issue presented in this case. If applicable, the appellants' firearm-sales operation would not comply with the requirements of L.C.O. 1160.04(a)(4) because the firearms sold from their home are not manufactured or fabricated on the premises. However, because the amendment to the ordinance was made after the trial

court's judgment was rendered in this case, we are unable to consider the recent amendment to the city's planning and zoning code. Under R.C. 713.15:

> The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, or for a period of not less than six months but not more than two years that a municipal corporation otherwise provides by ordinance, any future use of such land shall be in conformity with sections 713.01 to 713.15 of the Revised Code. The legislative authority of a municipal corporation shall provide in any zoning ordinance for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning ordinance.

Accordingly, our review is limited to whether the operation of Gun Galaxy qualifies as a lawful home occupation pursuant to the terms of the city's ordinances as they existed at the time this case was initiated. If so, the appellants are entitled to continue the operation of Gun Galaxy even though such use may not conform with the amended terms of L.C.O. 1160.04(a)(4).

{¶20} After careful consideration, we find that the intentional amendment of L.C.O. 1160.04(a)(4) to exclude the "sales of retail goods not manufactured or fabricated on the premises" demonstrates the city's attempt to add a new condition to the ordinance that did not exist at the time this case was decided. Contrary to the trial court's judgment, we find no words or phrases in the applicable versions of L.C.O. 1150.09(c)(73) or 1160.04 that would preclude an operation involved in the sale of goods from qualifying as a lawful "home occupation" in a residential district. While L.C.O. 1150.09(c)(73) and 1160.04 contain various requirements and conditions for an operation to qualify as a lawful "home occupation," there is no express restriction relating to the sale of goods. Applying the clear meaning of the words used in L.C.O. 1150.09(c)(73), we find the operation of Gun Galaxy can be reasonably construed as the

appellants' "profession" or "occupation" within the definition of a "home occupation" under the ordinance.

{¶21} Our review of provisions relating to the sale of retail goods in other sections of the city's ordinances support our interpretation of L.C.O. 1150.09(c)(73) and 1160.04. L.C.O. 1169.06 governs the accessory use of home occupations in "mixed use overlay districts." Under L.C.O. 1169.06(c)(8)(D), individuals are prohibited from operating home occupations in mixed use overlay districts that are engaged in the "retail sales of goods that are not made on the premises." Significantly, no such restrictive language was present in L.C.O. 1160.04 at the time this case was decided.

{¶22} Under the statutory-construction maxim *expressio unius est exclusio alterius* (the express inclusion of one thing implies the exclusion of the other), the express reference to the restriction prohibiting home occupations in mixed use overlay districts from engaging in the sale of retail goods under L.C.O. 1169.06 indicates that the omission of such a restriction in L.C.O. 1160.04 was intentional. Thus, the language of the ordinances demonstrates a clear intent to treat home occupations in residential areas different from those located in mixed use overlay districts. In other words, we find nothing in L.C.O. 1160.04 to suggest that the city's ordinances intended to prevent home occupations in residential districts from selling retail goods. As the appellants argue, if the city's ordinances intended to impose such a restriction, it would have included the language set forth under L.C.O. 1169.06(c)(8)(D) in L.C.O. 1160.04.

{¶23} In addition, we find no merit to the trial court's reliance on case law from other districts that interpret the definition of "home occupation" in ordinances that contain more extensive restrictions or different language than the provisions set forth in L.C.O. 1150.09(c)(73)

and 1160.04. As stated, we are guided by the language used in the ordinance disputed in this particular case.

{¶24} Based on the foregoing, we find the trial court erred in concluding that "the operation of a firearms sales dealership from a property zoned for residential use is not a home occupation under Lyndhurst's ordinances." In short, the trial court's finding is not supported by the broad definition of a "home occupation" set forth in L.C.O. 1150.09(c)(73). In the absence of express language prohibiting individuals from operating a home occupation engaged in the sale of goods in a residential district, this court's proverbial hands are tied. It appears the failure to include such prohibitive language in the applicable ordinance may have been an oversight. Nevertheless, we must apply the ordinance as it was written at the time this case was before the trial court, and cannot enforce restrictions that are not included therein.

{¶25} While we conclude that individuals are not expressly prohibited from selling goods in residential districts under the city's ordinances, the appellants are not entitled to judgment as a matter of law unless they demonstrate that no issues of material fact exist as to their compliance with the conditions of L.C.O. 1160.04(a)(4). In this case, the appellants attached the affidavit of Paul Brobst to their motion for summary judgment. Brobst averred, in relevant part:

> [M]y home occupation: (1) employs no person other than myself; (2) has generated no outdoor storage of materials, equipment or vehicles; (3) occupies no more than twenty-five percent of the total ground floor area of the dwelling; (4) is conducted wholly within my home; (5) uses no equipment which creates disturbances beyond my home; (6) has no window display or signboard is used to advertise the occupation except for a small decal on the side-door window informing of store hours; and (7) does not change the residential character of the exterior of my home.

{¶26} As stated by the trial court, the city's brief in opposition to appellant's motion for summary judgment set forth "no evidence to contradict [the] assertion" posed in Brobt's

affidavit. Accordingly, we find no issues of material fact as to the appellants' satisfaction of the conditions set forth under L.C.O. 1160.04. Accordingly, we reverse the trial court's judgment and enter judgment in favor of appellants as a matter of law.

{¶27} Appellants' sole assignment of error is sustained.

## B. The City's Appeal

{¶28} In its sole cross-assignment of error, the city argues the trial court erred in denying its motion to submit additional evidentiary materials.

{¶29} On April 25, 2017, the city filed a motion to submit additional evidentiary materials to support its motion for summary judgment. The city attempted to introduce an affidavit of the city's Chief of Police and photographs taken during the police investigation into a theft that occurred at appellants' home in April 2017. The city argued that the photographs taken inside the appellants' home "would have been submitted as evidence to show that appellants were operating a retail store at their residence."

{¶30} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. An appellate court, therefore, generally reviews a trial court's decision pertaining to the admission of evidence for an abuse of discretion. *State v. Gale*, 8th Dist. Cuyahoga No. 94872, 2011-Ohio-1236, ¶ 12, citing *State v. Finnerty*, 45 Ohio St.3d 104, 107, 543 N.E.2d 1233 (1989). An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 50 N.E.2d 1140 (1983).

{¶31} In this case, the trial court set forth a schedule for dispositive motions. Pursuant to the schedule, the city was required to file its motion for summary judgment by March 24, 2017, and its reply brief by April 17, 2017. Under these circumstances, we are unable to

conclude that the trial court abused its discretion by denying the city's motion to submit additional evidentiary materials. The court was well within its right to enforce its briefing schedule. In addition, there is no dispute that the appellants were engaging in the sale of firearms from their residential home. Photographs supporting this uncontested fact are irrelevant to the interpretation of the city's ordinances relating to the definition or lawful accessory use of a home occupation.

**{¶32}** The city's sole assignment of error is overruled.

**{¶33}** Judgment affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

It is ordered that appellants recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

MELODY J. STEWART, J., CONCURS IN JUDGMENT ONLY;
PATRICIA ANN BLACKMON, J., DISSENTS WITH SEPARATE OPINION

PATRICIA ANN BLACKMON, J., DISSENTING:

**{¶34}** I respectfully dissent from the lead opinion and would conclude that Brobst is not engaged in a "home occupation" under the Lyndhurst's codified ordinances. Accordingly, I

would affirm the order of the trial court that granted summary judgment to Lyndhurst on Brobst's complaint and on Lyndhurst's first counterclaim.

{¶35} Brobst argues that in 2005, he met with:

"Police Chief Andolfini, and *as I recall, the Building Commissioner*. I was informed that I would be permitted to operate the firearms dealership out of my home *as long as I met* four conditions [outlined within L.C.O. for home offices.]" (Emphasis added.)

{¶36} In relevant part, the key provisions include:

L.C.O. 1150.09(c)(73):
"Home occupation" means an accessory use which is an activity, profession, occupation, service, craft or revenue enhancing hobby clearly incidental and subordinate to the use of the premises as a dwelling and is conducted entirely within the dwelling. * * * However, such home occupation shall be conducted in the dwelling[.] * * * no person shall be employed other than members of his or her immediate household an such home occupation shall not give rise to a nuisance * * * and shall not be otherwise detrimental to the district.

L.C.O. 1160.04(a)(4) Professional offices and home occupations. Home occupations, as well as professional offices that provide an office in the home of a person practicing any of the recognized professions, including but not limited to accountant, architect, artist, clergyman, dentist, engineer, lawyer, physician, realtor, appraiser, photographer, planner or mental health counselor * * *, provided the following conditions are met:

A. No person shall be employed other than members of his or her immediate household;

B. The home occupations * * * generates no outside storage;

C. Such home occupation * * * occupies no more than twenty-five percent of the dwelling;

D. The home occupation * * * is conducted wholly in the dwelling.

E. No equipment is used which would create objectionable disturbances beyond the premises;

F. No window display or signboard is used[.]

**{¶37}** As an initial matter, I would note that the general allowance of "home professional offices" and other types of "home occupations" in residential zones arise from the fact that such uses were customary practices. *Mack v. Bd. of Appeals, Town of Homer*, 7 Misc.3d 607, 611, 790 N.Y.S.2d 361 (2005). "The doctor, dentist, lawyer, or notary has from time immemorial used his own home for his office, as has the dressmaker, milliner, and music teacher." *Id*. (Internal quotations omitted.) Retail gun sales do not appear to fit within this general framework.

**{¶38}** Furthermore, although Brobst asserts that he met with the chief of police, this official has no authority to approve building and zoning matters of this nature. Brobst also states, "as I recall [I also met with] the Building Commissioner." However, this statement lacks definitiveness. The city recognizes, that if it happened, the Building Commissioner does have some interpretive authority over zoning matters. However, there is no evidence of a letter, permit, or certificate containing an official determination on the matter, and no zoning board of review proceedings. Moreover, "[c]ourts have 'been loathe to apply doctrines of waiver, laches, or estoppel to governmental entities or arms thereof.'" *State v. Tri-State Group*, 7th Dist. Belmont No. 03 BE 61, 2004-Ohio-4441, ¶ 57, quoting *Gold Coast Realty, Inc. v. Bd. of Zoning Appeals of Cleveland*, 26 Ohio St.2d 37, 39, 268 N.E.2d 280 (1971).

**{¶39}** Finally, Brobst argued that he had "maintained inventory comparable to the inventory I have today for at least the past six years [2011]." The city's evidence demonstrated that Gun Galaxy's inventory has increased from the initial 2005 operation. From 2008 through 2011, Brobst bought and sold almost 3,000 firearms. Of this, 250 firearms were not sold and remained as inventory. From 2011 to 2014, he bought and sold over 4,000 firearms and 313 remained as inventory. He advertises online as a "store" with store hours and store policy.

Therefore, it is doubtful to me that the operation of Gun Galaxy continues to be "incidental and subordinate to the use of the premises as a dwelling," as required under L.C.O. 1150.09(c)(73). Accordingly, I dissent.